Allen BETHANY, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–89–00973–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 25, 1991.

Rehearing Overruled Sept. 5, 1991.

Diane D. Clark, Texas City, for appellant.

Roger L. Ezell, Galveston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and CANNON, JJ.

## OPINION

MURPHY, Justice.

Appellant was indicted by a grand jury for the offense of murder. Appellant's first trial resulted in a mistrial. In his second trial, appellant entered a plea of not guilty before the jury. He was convicted of the lesser offense of voluntary manslaughter, and the jury assessed punishment at twenty years' confinement. In three points of error, appellant complains of the admission of certain evidence, the court's charge and violations of his constitutional rights arising from the conduct of the prosecutors and the trial court. We reverse and remand.

This case arises from a barroom brawl in which appellant fatally wounded the com-

plaintant, Harold Robinson. Appellant was indicted for the offense of murder, and he retained Peter J. LaValle to represent him as his attorney. Appellant's first trial began on August 15, 1988 and ended in a mistrial on August 19, 1988. Prior to his second trial, appellant established his indigency and requested to have counsel appointed. In response to this request, the trial court appointed Diane D. Clark to represent appellant. Although Ms. Clark was appointed to represent appellant on August 31, 1988, Mr. LaValle, appellant's previous attorney, continued to assist in appellant's defense. Appellant's second trial began on June 21, 1989 with visiting judge John McKellips presiding. Appellant was convicted of voluntary manslaughter, and this appeal follows.

 In his third point of error, appellant contends that he was denied a fair trial. Specifically, appellant complains that the cumulative effect of improper actions on the part of the trial court and the state created a coercive atmosphere which operated to violate his rights to a fair trial and effective assistance of counsel under the fifth, sixth and fourteenth amendments to the United States Constitution. We could not agree more.

It is axiomatic that every person accused of a crime is guaranteed a fair trial. *E.g., Henley v. State*, 576 S.W.2d 66, 69 (Tex. Crim.App.1978). As the Supreme Court and the Court of Criminal Appeals have noted, "the atmosphere essential to the preservation of a fair trial—the most fundamental of all freedoms—must be maintained at all costs." *Estes v. Texas*, 381 U.S. 532, 540, 85 S.Ct. 1628, 1632, 14 L.Ed.2d 543 (1965); *Taylor v. State*, 420 S.W.2d 601, 607 (Tex.Crim.App.1967). In this regard, it is the duty of both the trial court and the prosecutors to conduct themselves so as to ensure that an accused receives a fair trial. *E.g.,* TEX.CODE CRIM.PROC.ANN. art. 2.03(b) (Vernon 1977). In addition, an accused is entitled to the assistance of an attorney who will play the critical role necessary in our adversarial system to ensure that the trial is fair. *E.g., Strickland v. Washington*, 466 U.S.

668, 685–86, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984).

 In an appeal of this nature, it is the fundamental purpose of this court to ascertain whether or not the convicted defendant received a fair trial in the court below. *See Ex parte Adams*, 768 S.W.2d 281, 293 (Tex.Crim.App.1989). In making this determination, any indication of prejudice or opinion of guilt on the part of the trial judge requires close scrutiny of his actions. *E.g., Zima v. State*, 553 S.W.2d 378, 380 (Tex.Crim.App.1977). Likewise, although the character of a prosecutor does not necessarily dictate the fairness of a trial, the conduct and discretion of the prosecutors in this case will be necessarily involved in our analysis. *See Ex parte Adams*, 768 S.W.2d at 293.

In support of this point of error, appellant delineates twelve specific instances of judicial and prosecutorial misconduct which he contends resulted in the deprivation of his constitutional rights. Although the individual instances of conduct complained of by appellant, standing alone, might not require reversal of this cause, we find that the cumulative effect of such conduct was to deny appellant a fair trial and the effective assistance of counsel. To support this finding, it is not necessary for us to address all of the matters complained of by appellant. The following summary of the events which transpired in the court below speaks for itself.

Several of the matters complained of by appellant arise from the trial court's actions in connection with appellant's offer of certain documentary evidence. During appellant's case-in-chief, appellant offered properly authenticated medical records into evidence. The medical records pertained to a prior incident in which the complainant had attacked and stabbed appellant. The trial court refused to admit the records into evidence, because it found that there was an insufficient connection between the prior incident and the questions at issue in the trial. Later in the trial, during a recess, the trial judge informed counsel that he had been reading the medical records that were not in evidence, and that he found

them to be inconsistent with the testimony appellant had given regarding the injuries he had received in his prior encounter with the complainant. The judge stated that he felt he had a responsibility to make the state aware of the purported discrepancy, and he tendered the medical records to one of the prosecutors for his review.

The trial judge was apparently disturbed by the fact that appellant had testified that he received several broken ribs in the earlier fight, but that the medical records failed to reveal such an injury. Appellant's counsel attempted to explain to the judge that appellant had been treated for the injuries in question at more than one hospital. The medical records offered into evidence were from the first hospital which treated appellant, but his broken ribs were not diagnosed or treated until he visited a second hospital.

The judge was not satisfied with this explanation. He stated that he could "not permit the jury to deliberate on what may be perjured testimony" and presented the defense with two options: appellant could either voluntarily retract his prior statements in front of the jury, or the court would call the defendant to the stand on its own and question him in front of the jury regarding the medical records. Appellant refused to retract the statement in question and moved for a mistrial on grounds that the court had abandoned its neutral status by taking on the role of an advocate and telling the state how to conduct its case. Following adamant denials by the judge and the prosecutors, appellant's motion was denied. Thereafter, the state offered the medical records which the court had previously held inadmissible into evidence.

Following the state's offer of the medical records into evidence, appellant again complained to the court:

[DEFENSE COUNSEL]: The court is the one who brought up the document and perhaps having it offered or admitted, and not the state, which I don't think is proper.

[THE COURT]: The court was sitting up here looking at a document which stated contrary to what defendant was testifying to while the defendant was testifying.

[DEFENSE COUNSEL]: That document had not been admitted into evidence, your honor.

[THE COURT]: That's right. And that document was brought to the attention of both of you, and apparently you had forgotten about it—I don't know—or intended to forget about it. That document was brought to the attention of both counsel; and as you well know, there is a good possibility that your client has committed perjury.

[DEFENSE COUNSEL]: I don't believe so, your honor.

[THE COURT]: Pardon?

[DEFENSE COUNSEL]: I respectfully disagree with the court. I don't think he has committed perjury, sir.

Following this exchange, the trial judge admitted the medical records into evidence over appellant's objection after reaching an understanding with the prosecutors that the documents would be used to impeach appellant's testimony in the state's closing argument.

After the medical records had been admitted into evidence, the judge began to question appellant's counsel regarding the other hospitals which had treated appellant. He began his interrogation by demanding to know what other hospitals appellant had visited. Appellant's counsel initially refused to disclose the information on grounds that it was confidential, but eventually informed the court that appellant had been treated at John Sealy Hospital on numerous occasions over the past six years. The judge then demanded to know why appellant's counsel had not produced medical records regarding appellant's visits to John Sealy Hospital and ordered appellant's counsel to immediately present any such evidence to the court. Appellant's counsel refused to comply with the court's demands and informed the court of her reasons for doing so:

[DEFENSE COUNSEL]: I don't think that I should be forced to present any evidence unless I feel that it is necessary

for the defense in this case, your honor. Otherwise, you are becoming an advocate in this case.

[THE COURT]: I am doing my duties as a judge of the this case, young lady.

[DEFENSE COUNSEL]: I understand that it's your position, your honor.

[THE COURT]: And you are approaching the threshold of contempt. And you had your warning. Do you understand me?

[DEFENSE COUNSEL]: I do, your honor; but I have to represent my client as well.

This exchange concluded the discussion between appellant's counsel and the court regarding the admission of the medical records.

In this point of error, appellant also complains of conduct on the part of both the prosecutors and the trial court in connection with the state's attempt to call one of appellant's attorneys as a witness. On the fifth day of appellant's trial, the state served a subpoena on Peter J. LaValle, one of appellant's attorneys. The state was seeking the testimony of Mr. LaValle in order to authenticate certain court records which would aid in the prosecution of his client. The state had not notified Mr. La-Valle prior to trial that he would be called as a witness. During a hearing on appellant's motion to quash the subpoena, the state conceded that it knew of other witnesses who could testify instead of Mr. LaValle. However, despite the fact that the state knew the names and whereabouts of such witnesses, it made no effort to subpoena an alternative witness.

In the course of the hearing on appellant's motion to quash the subpoena, Mr. LaValle informed both the court and the prosecutors that he would not testify against his client, and that if he was called upon to do so, he would refuse to answer any questions on grounds that it would constitute a conflict of interest and violate his client's right to effective assistance of counsel. One of the prosecutors suggested that Mr. LaValle could avoid being called as a witness by agreeing to stipulate to the authenticity of the documents in question.

In response to this suggestion, appellant's counsel told the prosecutor "We're not stipulating to anything." Later, appellant's counsel informed the court of this fact by stating "We're not willing to stipulate, your honor."

The prosecutor was clearly aware of the fact that appellant's counsel was not willing to stipulate to the authenticity of the documents. Despite this fact, he sought to gain unfair advantage by making the following challenge in the presence of the jury:

Your honor, if I could get these documents, I would be glad to give Ms. Clark an opportunity to stipulate to these official court documents certified by the district clerk's office if she would like to.

Forced to respond, appellant's counsel answered the prosecutor's challenge by stating: "The prosecutor knows I have not agreed to stipulate, that they have to prove up their case as to each and every element."

The trial judge and the prosecutors were also clearly aware that Mr. LaValle would not testify against his own client. Despite this fact, one of the prosecutors proceeded to call Mr. LaValle as a witness for the state immediately after appellant's counsel refused to stipulate to the authenticity of the documents. When Mr. LaValle was initially called as a witness, appellant's counsel again informed the court that Mr. LaValle would not testify, and warned the prosecutor of possible ethical violations. At this point, the prosecutor passed the decision as to whether Mr. LaValle should be called as a witness to the judge. The judge accepted this offer to direct the state's case and called Mr. LaValle to the witness stand.

When he took the stand, Mr. LaValle testified exactly as he had previously informed both the court and the prosecutor that he would:

[PROSECUTOR]: Would you state your full name for the court, sir?

[MR. LAVALLE]: Peter J. LaValle.

[PROSECUTOR]: Mr. LaValle, how are you—what is your profession?

[MR. LAVALLE]: I'm an attorney.

[PROSECUTOR]: Have you represented Allen Bethany in the past?

[MR. LAVALLE]: I have.

[PROSECUTOR]: Did you represent Allen Bethany in 1976?

[MR. LAVALLE]: Your honor, at this time I would refuse to further testify because it would constitute a conflict of interests with my client, Allen Bethany, and would violate his 6th amendment right to competent counsel.

[THE COURT]: Mr. LaValle, this court hereby orders you to answer the question.

[MR. LAVALLE]: And I respectfully refuse, your honor.

The judge ordered Mr. LaValle to be held in the Galveston County Jail "without bail for an indefinite period of time." Mr. La-Valle attempted to secure his release from custody by requesting a personal recognizance bond. The judge agreed that an attorney would be entitled to a personal recognizance bond, but he refused the request on grounds that Mr. LaValle was not appellant's attorney.

At the time the trial judge ruled that Mr. LaValle was not serving as appellant's attorney, Mr. LaValle had been sitting before the jury at the defense counsel table for ten days. Mr. LaValle had filed several pleadings with the court on appellant's behalf, and at trial, he had participated in the examination of witnesses and engaged in several exchanges with the court regarding the charge and evidentiary matters. Despite Mr. LaValle's obvious participation as an attorney in this case, the judge concluded that he was not acting as appellant's attorney, because "[t]his is something you've done voluntarily, pro bono." Mr. LaValle, who had recently suffered a serious heart attack, was committed to jail without bail and was forced to file a petition for a writ of habeas corpus. Following a hearing on the petition for a writ of habeas corpus before another judge, it was found that Mr. LaValle did not commit contempt of court by refusing to testify against his own client, and Mr. LaValle was released from custody.

When he was released from custody, Mr. LaValle returned to appellant's trial and resumed his place at the defense counsel table. The trial judge then engaged in the following exchange with defense counsel:

[THE COURT]: Mr. LaValle, do you plan any active participation in this case beyond sitting at counsel table for the rest of this trial?

[MR. LAVALLE]: I do, your honor, through argument.

[THE COURT]: Do you plan—you ask to do some argument?

[MR. LAVALLE]: Do I plan to participate in the argument on punishment?

[THE COURT]: Yes. Is that what you would want to do?

[MR. LAVALLE]: We haven't discussed it at this time, your honor; but I probably would.

[THE COURT]: Well, I need to know. Yes or no?

[MR. LAVALLE]: Yes, your honor.

[THE COURT]: Do you have anything to offer beyond what this court is already aware of regarding your authority in acting in this case? And I would hear it now because this court considers, as I have previously stated in hearing on this matter, that you are not an attorney in this case. I have no objection to you sitting at counsel table and assisting Ms. Clark; but if you intend to take an active part, the rules require that I—that you show authority to act and from what I have heard and seen so far, you have no such authority to act for the defendant in this case and that's why I'm asking you the question. Do you plan to do something besides sit at counsel table?

[MR. LAVALLE]: Your honor, if the court wishes, I could have Mr. Bethany execute a statement in writing that he wishes me to assist Ms. Clark in the trial of this case as nonpaid counsel in his behalf.

[THE COURT]: You already know what the rules are regarding written notice to the court and notice to counsel, opposite counsel.

[MS. CLARK]: Your honor. If I may interject to save time, our position is that

we are the attorneys for Mr. Bethany, that being Peter LaValle and myself. We consider ourselves Mr. Bethany's lawyer. Mr. Bethany considers us his lawyer. For the same reasons that we brought up before, before this court, for all purpose as far as we're concerned, Mr. LaValle is the lawyer for Mr. Bethany. I was planning on dividing up the final punishment argument between Mr. LaValle and myself and having both of us argue for Mr. Bethany.

[THE COURT]: You heard me testify in the contempt proceedings that I did not consider Mr. LaValle to be an attorney in this case.

[MS. CLARK]: I am just stating our position, your honor.

[THE COURT]: All right.

[MS. CLARK]: I am not arguing with the court.

[THE COURT]: Unless you can show me some authority to the contrary, then Mr. LaValle may sit at counsel table and assist you, Ms. Clark, who is the attorney of record, but may not be permitted to actively participate in this case.

At this point in the trial, appellant's counsel moved for a mistrial on numerous specific grounds arising from the conduct of both the court and the prosecutors in connection with the events described above. The motion was denied.

In excluding Mr. LaValle from participation in the punishment phase of appellant's trial, the judge relied upon provisions in the Texas Rules of Civil Procedure. Specifically, he relied upon TEX.R.CIV.P. 8, which pertains to the designation of an "attorney in charge" in civil cases. Apparently unaware of the fact that the scope of the rules is limited to "actions of a civil nature," see TEX.R.CIV.P. 2, the judge ruled that Mr. LaValle could not participate in the trial, because he had not filed a document designating himself as appellant's attorney. Defense counsel, in an effort to prove the maxim that turnabout is fair play, pointed out to the judge that there was no document in the court's file authorizing the prosecutors to act as attorneys on behalf of the state. In an absurd turn

of events, the judge noted that there were no provisions in the Texas Rules of Civil Procedure regarding the appointment of district attorneys to act on behalf of the state and proposed to disqualify the prosecutors from participation in the trial. However, following a recess in which one of the prosecutors called the district attorney's office, the judge allowed the case to proceed.

In this point of error, appellant also complains of statements made by the prosecutors and the trial court during final arguments. Appellant first complains that the prosecutors repeatedly attempted to attack him over the shoulders of his counsel by accusing defense counsel of bad faith and insincerity. In the state's opening argument, one of the prosecutors stated:

Ladies and gentlemen, I submit to you that when the against counsel gets up here, they might attempt to lead you down some rabbit trails, set up some smoke screens; and that's done for one purpose. That's done to fade the heat, get the focus off the defendant; and I submit to you, ladies and gentlemen, that Ms. Clark might try to talk some legal jargon and confuse you about this word "intent."

Later, one of the prosecutors began his closing argument by stating:

We've heard from counsel for the defense. You've heard Ms. Clark talk. I won't be talking as long as Ms. Clark, but I don't fault her for talking a long time because she had a lot of things she needed to try to obscure in your mind. She needed to try to obscure what this case is all about.

In closing argument, the prosecutor discussed the definition of "intent" again and stated: "Let's talk about 'intent.' Ms. Clark certainly doesn't want you to realize what this legal definition of 'intent' is."

Appellant next complains of statements made by the court during closing arguments. In appellant's closing argument, defense counsel attempted to explain the matters which had arisen during trial in connection with the admission of appellant's medical records. As discussed previ-

ously in this opinion, the judge had admitted the medical records with the express understanding that the prosecutor would use them in his closing statement to impeach appellant's credibility. However, before appellant's attorney could explain any matters relating to the medical records, the judge interrupted her *sua sponte* and suggested that she was attempting to mislead the jury. The exchange between the court and appellant's counsel, which took place in front of the jury, transpired as follows:

[MS. CLARK]: Now, the prosecutor—I can tell you this: he's probably going to come up here and say that there were no wounds to that man's ribs. I'm honest with you. I haven't tried to hide anything. I tried to introduce some medical records to you and wasn't allowed to, and I'll tell you—

[THE COURT]: Wait just a minute. I think you'd best explain that statement. The medical records you are referring to were admitted into evidence later as a state's exhibit.

[MS. CLARK]: They were admitted as a state's exhibit. That's correct.

[THE COURT]: You withdrew your offer of that evidence. This jury is not going to be misled.

[MR. LAVALLE]: Your honor, we object to the court making statements to the jury during the argument.

[THE COURT]: This court will not permit this jury to be misled. Do you want to explain your statement?

Appellant's attorney proceeded to explain to the jury, as she had earlier explained to the court, that appellant had been treated at more than one hospital, and that the medical records in question were from a hospital that had neither diagnosed nor treated appellant's broken ribs.

The foregoing summary of the events which transpired during the trial of this case is by no means an exhaustive discussion of the questionable conduct engaged in by the trial court and the prosecutors in this cause. Appellant complains of many other matters, not the least of which is the court's propensity for engaging in *ex parte* communications with the prosecutors in

this case. We need not address those matters, however, because the events detailed above are more than enough to support our conclusion that appellant was denied a fair trial and the effective assistance of counsel.

It is manifestly clear that the trial court abandoned its neutral status and took up the role of an advocate in this case. After reviewing medical records that were not in evidence, the judge compared those documents to discreet portions of the testimony at trial. When he discovered what he perceived to be a discrepancy between the records and the testimony, he brought the matter to the attention of the prosecutors. In so doing, the judge accused appellant of perjuring himself and openly suggested that appellant's attorneys were guilty of suborning perjury. In interrogating defense counsel regarding the medical records, the judge forced the attorneys to disclose confidential information and demanded that they produce additional records for the benefit of the court and the prosecutors. Later, he ordered appellant to retract testimony which had been corroborated by other evidence. When appellant refused, the judge threatened to call appellant before the jury and cross-examine him regarding the medical records.

The judge continued to act as an advocate for the state throughout the trial. He repeatedly made suggestions to the prosecutors as to how the state's case should be presented. When one of the prosecutors left the decision of whether to call Mr. LaValle as a witness to the court, the judge accepted the opportunity and called Mr. LaValle to the stand. The judge subsequently disqualified Mr. LaValle from participating in the trial on his own motion. Later, during appellant's closing argument, the judge *sua sponte* interrupted defense counsel and suggested in front of the jury that appellant's attorney was attempting to misrepresent facts and mislead jurors.

Although the prosecutors in this case did not instigate the particular irregularities discussed above, it is clear from the record that they made no effort to mitigate the damage caused by such problems. Al-

though he was fully aware that defense counsel would refuse, one of the prosecutors sought to gain an advantage by challenging appellant's attorney in front of the jury to stipulate to certain facts. Despite the fact that other equally competent witnesses were available to the state, the prosecutor then called Mr. LaValle as a witness. After Mr. LaValle had informed both the court and the state that he would not testify against his client, the prosecutor proceeded to force Mr. LaValle to take the stand in front of the jury and refuse to testify. Later, both prosecutors utilized their jury arguments to attack appellant over the shoulders of his attorneys and accuse defense counsel of bad faith and insincerity.

In addition to these problems, the record in this case is replete with other events which served to deprive appellant of his constitutional rights. The trial judge refused to recognize Mr. LaValle as appellant's attorney, despite his obvious relationship with appellant and participation in the trial. The judge eventually committed Mr. LaValle to jail without bail for an indefinite time period. When Mr. LaValle was released following the habeas corpus proceeding, the judge refused to recognize the finding of non-contempt and barred Mr. LaValle from further participation in the trial.

Any system of government that incorporates within its guarantees the idea of ordered liberty necessarily recognizes and appreciates the necessity of providing a process to litigate and resolve allegations of criminal conduct. *Ex parte Adams*, 768 S.W.2d 281, 293 (Tex.Crim.App.1989). Under our system of constitutional government, the ultimate aim of such a process must be fundamental fairness. *Id.* In pursuit of this aim, we rely on an adversarial system to produce just results. Where a trial judge abandons his position as a neutral arbiter and takes on the role of an advocate, this system cannot function and fairness is lost. Likewise, where the court and the state interfere with the ability of an accused's counsel to make independent decisions about how to conduct the defense, the accused is denied his right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 674, 686, 104 S.Ct. 2052, 2057-58, 2063-64, 80 L.Ed.2d 674 (1984). Under such circumstances, the injury is suffered not only by the accused, but by society as a whole.

We hold that appellant was deprived of his rights to a fair trial and the effective assistance of counsel in violation of U.S. Const. amend. V, VI, XIV. Accordingly, appellant's third point of error is sustained. In view of our disposition of this point of error, we need not address appellant's other points of error.

The judgment of conviction is reversed, and the cause is remanded for a new trial.