Opinion issued December 23, 2004






 


 





     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00745-CR




ABDULLAH M. HAJJAR, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the County Criminal Court at Law No. 13
Harris County, Texas
Trial Court Cause No. 1150625




O P I N I O N
          Abdullah Hajjar, appellant, pleaded not guilty to assault on a family member,
his wife. The jury found him guilty and the trial court assessed punishment at one
year community supervision, a $1,000 fine, and 10 days in jail as a condition of his
community supervision. In five points of error, appellant contends that (1) the trial
court undermined appellant’s presumption of innocence, thereby denying his right to
a fair trial and effective assistance of counsel at trial; (2) the trial court erred in
allowing the State to identify an exhibit as a “booking photo”; (3) the trial court erred
in admitting evidence that was of little or no probative value and unfairly prejudicial;
(4) the trial court erred in permitting the State’s repeated use of inadmissible
“backdoor” hearsay evidence; and (5) appellant was denied his right to a fair trial and
effective assistance of counsel at trial. We affirm.
                                                            BACKGROUND
            Around 11:30 p.m. on December 24, 2002, appellant left his wife, Rana, and
their two children at home to go pick up his mother in Houston. After he left the
house, Rana took the children and drove somewhere. Appellant returned with his
mother to an empty house. In the early morning hours of December 25, when Rana
and their children pulled into the driveway, appellant was waiting for her. 
          According to Rana, when she refused to get out of the car, appellant pulled her
out of the car by her hair and kicked her in the head and stomach while she was on
the ground.
          According to appellant’s mother, Rana refused to get out of the car. Appellant
reached into the car to retrieve the keys and dragged Rana out of the car, where she
threw herself on the ground, causing her injuries. While Rana was swinging at him,
appellant apparently attempted to calm her down by hugging her. When she broke
away from appellant, Rana ran toward a neighbor’s house screaming. 
          Anthony and Angela Burlingame, neighbors from across the street, heard a
scream coming from outside their house and then, a few seconds later, a second
scream, which Anthony characterized as a scream of terror. Once outside, they saw
Rana running into their yard and appellant chasing her. As Rana reached the
Burlingames’ front porch, appellant yelled an expletive at Rana. Anthony asked
appellant what was going on, but appellant turned around and walked back to his
house in silence. Rana explained to Angela what had happened. Rana told her that
she had been beaten by appellant and she wanted to call the police. Anthony noticed
that Rana’s face was bleeding and that she had a knot on the top of her head, cuts on
her elbows and hands, and scrapes on her knees. 
          While Rana spoke with Angela, Anthony went to appellant’s house to speak
with him. Anthony informed appellant that, at Rana’s request, he had called the
police. Appellant told Anthony that he had not hit Rana. Shortly thereafter, a number
of police officers, responding to a family disturbance complaint, arrived at the scene. 
 At Rana’s request, an EMS ambulance was called to the scene, but she was not
transported to a hospital.
            After conducting an investigation, appellant was arrested by the police officers. 
The officers took appellant to the police station and booked him. As part of that
process, the police took a booking photograph of appellant. 
RIGHT TO A FAIR TRIAL
          In his first point of error, appellant asserts that the trial court erred in
requesting that he indicate in front of the jury which witnesses he might call to testify
at trial. Specifically, appellant contends the trial court’s request undermined the
presumption of innocence to which appellant was entitled, thereby violating his rights
to a fair trial and to effective assistance of counsel guaranteed to him by the Fifth,
Sixth, and Fourteenth Amendments of the United States Constitution.
          Before either side delivered its opening statement, the State apparently invoked
the rule.


 See Tex. R. Evid. 614; Tex. Code Crim. Proc. Ann. art 36.03 (Vernon
Supp. 2004-2005). When the trial court invokes “the rule,” it excludes witnesses
from the courtroom pursuant to Rule 614, which provides in relevant part that “at the
request of a party the court shall order witnesses excluded so that they cannot hear the
testimony of other witnesses, and it may make the order of its own motion.” Tex. R.
Evid. 614. The purpose of the rule is to prevent the testimony of one witness from
influencing the testimony of another. Martinez v. State, 867 S.W.2d 30, 40 (Tex.
Crim. App. 1993); Phillips v. State, 64 S.W.3d 458, 459 (Tex. App.—Houston [1st
Dist.] 2001, no pet.). The trial court wanted to determine which witnesses were to
testify so the judge could swear them in and exclude those witnesses so that they
could not hear the testimony of other witnesses. The trial court asked the attorneys
on both sides to help him identify whom they intended to call as witnesses. Defense
counsel stated that he was not sure whom he was going to call and, instead, requested
that all witnesses subpoenaed by the State be sworn in as witnesses. The trial court
rejected this suggestion and told defense counsel that he would only swear in and
exclude from the courtroom those who, in good faith, were going to be called. 
          After the trial court swore in those whom the State affirmatively indicated it
intended to call as witnesses, defense counsel repeated his request that all people
under subpoena be sworn in, to which the trial court responded that he would swear
in only those whom defense counsel intended to call or whom there was a chance
defense counsel would call. Defense counsel responded that he did not have the
burden of proof and that he could not tell whether or not he was going to call as
witnesses any of those who were subpoenaed by the State. The trial court repeated
its denial of defense counsel’s request, but defense counsel then interjected that he
could not tell whether he would call them until he heard the evidence. At this point,
the trial court sought confirmation that “there is a chance you may call them,” to
which defense counsel answered in the affirmative. The subpoenaed witnesses were
then duly sworn in. The defense did not subpoena any witnesses apart from those
subpoenaed by the State. 
          After appellant entered his plea before the jury and after both sides presented
their opening statements, defense counsel attempted to make a record, outside the
jury’s presence, regarding the issue of swearing-in the subpoenaed witnesses. 
Defense counsel reiterated that he did not know whom he was going to call until he
heard the evidence put on by the State, that he did not have the burden of proof, and
that he objected to the manner in which the court “put [him] on the spot in front of the
jury by repeated questions from the Court, ‘Are you going to call them. Are you
going to say in good faith [that you might call them].’”
          Appellant did not timely object to the trial court’s request for appellant to
indicate whom he would put on the stand to testify on the basis of undermining
appellant’s presumption of innocence. To preserve a complaint for appellate review,
a defendant must object timely to the trial court. See Tex. R. App. P. 33.1; Rhoades
v. State, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996). However, an appellate court
may “tak[e] notice of fundamental errors affecting substantial rights although they
were not brought to the attention of the [trial] court.” Tex R. Evid. 103(d); see
Jasper v. State, 61 S.W.3d 413, 420 (Tex. Crim. App. 2001); Blue v. State, 41 S.W.3d
129, 132 (Tex. Crim. App. 2000) (plurality op.). In Blue, a plurality of the Court of
Criminal Appeals held that a trial court’s comments,


 “which tainted [the defendant’s]
presumption of innocence in front of the venire, were fundamental error of
constitutional dimension and required no objection.” Blue, 41 S.W.3d at 132; see
Jasper, 61 S.W.3d at 421. Even if we were bound to follow the plurality opinion in
Blue, a matter we do not decide, we conclude that appellant’s complaints here do not
rise to the level of fundamental error. See Jasper, 61 S.W.3d at 421. 
          Interjections by a trial court that correct misstatements or misrepresentations
of previously admitted testimony, or that clear up points of confusion, are not
improper. See id. (“A trial judge has broad discretion in maintaining control and
expediting the trial.”). Here, the trial court’s interjections sought to clear up a point
of confusion about whether appellant might call any of the people on the subpoena
list as witnesses. The interjections did not convey the court’s opinion about
appellant’s guilt or innocence. The trial court did not violate appellant’s fundamental
rights even if the trial court appeared irritated at appellant in refusing to, at first,
indicate whom he intended to call as witnesses. See id. (holding that irritation by trial
court at attorney does not translate to indication of court’s views about defendant’s
guilt or innocence). 
          Accordingly, we overrule appellant’s first point of error.
Probative Value of Evidence
          In his second and third points of error, appellant contends that the trial court
erred in admitting into evidence State’s Exhibit 17 and in permitting the State to
identify State’s Exhibit 17 as a “booking photo” of appellant. Specifically, appellant
contends that the “booking” photograph of appellant, State’s Exhibit 17, was of little
or no probative value concerning any disputed issue and was offered by the
prosecution and classified as a “booking photo” by the State’s witness solely to
prejudice the jury against appellant.


 The State argues that the evidence was properly
admitted to rebut appellant’s claim of self-defense.
          We review the trial court’s determination of admissibility under an abuse-of-discretion standard. Montgomery v. State, 810 S.W.2d 372, 378-79 (Tex. Crim. App.
1990); Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.] 2000,
pet. ref’d). 
          Here, appellant objected that the photograph was irrelevant and that, even if
relevant, was more prejudicial than probative. Tex. R. Evid. 402, 403. We must first
determine, therefore, whether the evidence is relevant. Evidence is relevant if it tends
to make the existence of any fact that is of consequence to the determination of the
action more probable or less probable than it would be without the evidence. Tex.
R. Evid. 401. Appellant’s defense to the charges was that he acted in self-defense. 
The photograph was introduced to rebut this claim of self-defense by showing that
there was no sign of injuries to the appellant. Although some of the testimony
specified that Rana had hit appellant in areas not shown in the photograph, there was
also testimony that Rana had hit appellant without specifying where. Based on these
facts, the photograph was relevant.
              Having determined that the evidence is relevant, we must determine whether
the risk of unfair prejudice substantially outweighs the probative value. Tex. R.
Evid. 403; Goldberg v. State, 95 S.W.3d 345, 366 (Tex. App.—Houston [1st Dist.]
2002, pet. ref’d). Relevant evidence may be excluded if its potentially prejudicial
effect outweighs its probative value. Swarb v. State, 125 S.W.3d 672, 681 (Tex.
App.—Houston [1st Dist.] 2003, pet. dism’d); Tex. R. Evid. 403. The reviewing
court, using an abuse-of-discretion standard, should “do more than decide whether
the trial judge did in fact conduct the required balancing between probative and
prejudicial values; the trial court’s determination must be reasonable in view of all
relevant facts.” Santellan v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)
(citations omitted). A Rule 403 balancing test includes, but is not limited to, the
following factors:
(1) how probative is the evidence;
(2) the potential of the evidence to impress the jury in some
irrational, but nevertheless indelible way;          (3) the time the proponent needs to develop the evidence; 
          and 
          (4) the proponent’s need for the evidence. 
 
Reese v. State, 33 S.W.3d 238, 240-41 (Tex. Crim. App. 2000).
          The photograph, which was taken after appellant was charged at the police
station on the night he committed the offense, was introduced by the State to rebut
appellant’s defensive theory that he acted in self-defense after Rana attacked him. 
Appellant suggests numerous prejudicial inferences that the jury could possibly have
drawn from the introduction of the photograph, including that extra steps were
necessary to control him, that the police feared he might return to his home that night,
that he was still in jail at the time of the trial, and that it might suggest that he had a
prior criminal record. All of these suggested inferences focus on the fact that the jury
became aware that appellant was booked; there is no objection to the content of the
photograph. Appellant’s argument turns on whether, by being characterized as a
booking photograph the picture was rendered unfairly prejudicial.
          Since the evidence was presented to rebut a defensive theory of the appellant,
the evidence was strongly probative. The photograph demonstrates appellant’s
appearance only a few hours after the offense was committed. The photograph helps
the jury by allowing them to see whether appellant sustained any injuries, instead of
relying solely on the testimony of one officer who claimed he saw no sign of
appellant’s injuries. The photograph does not have the potential to impress the jury
in some irrational but indelible way because appellant concedes that “a juror could
not possibly have known that the photograph had been taken [at the police station]
by simply looking at the photograph.” Furthermore, the evidence was addressed for
only a very brief period of time. 
            The mere classification of State’s Exhibit 17 as a “booking photo” is not itself
unfairly prejudicial. Using the term “booking photo” to describe a photograph of a
defendant in a criminal trial does not reveal any fact about a defendant that is not
already known to the jury when they are first told by the trial judge that they will be
sitting to determine the guilt or innocence of a people charged with a crime. A
“booking” photograph reveals that a criminal defendant had his photograph taken at
a jail when he was first booked after being charged with a crime. This is the only
information the “booking” photograph of appellant revealed to the jury. As a juror
in a criminal trial, one already knows that the defendant has gone through the process
of being booked and charged with a crime. Therefore, the mere classification of a
photograph that was taken at a jail as a “booking” photo does not reveal additional
prejudicial facts about a defendant. Identifying State’s Exhibit 17 as a “booking
photo” of appellant was not unfairly prejudicial. 
          Rule 403 favors the admission of relevant evidence and carries with it a
presumption that probative evidence will be more probative than prejudicial. See
Long v. State, 823 S.W.2d 259, 271 (Tex. Crim. App. 1991). The alleged prejudice
suggested by appellant does not overcome this presumption. The suggestions that the
jury might believe that booking the appellant was an extraordinary step required to
protect appellant’s wife are unsupported. Contrary to appellant’s suggestion, the jury
could not have inferred from this evidence that appellant was still in jail at the time
of trial because it was referred to merely as a “booking” photograph, which implies
a photograph taken as appellant was processed on the assault charges. Finally,
appellant fails to explain how the “booking” photograph, describing his appearance
on the night of his arrest for assaulting his wife, would suggest that he had a prior
criminal history. 
            Having reviewed the record, we find the trial court acted reasonably when it
admitted into evidence the photograph of appellant. Consequently, the trial court did
not abuse its discretion in admitting this photograph. 
             Accordingly, appellant’s second and third points of error are overruled.
“Backdoor” Hearsay Evidence
          In his fourth point of error, appellant contends that the trial court erred when
it admitted evidence of statements appellant’s mother made to an investigating officer
and statements appellant’s son made to appellant’s mother, regarding whether
appellant’s son had acknowledged that he witnessed the offense. Moreover, appellant
contends that the State’s use of improper “backdoor” hearsay evidence constituted
purposeful prosecutorial misconduct. 
          We review the trial court’s decision to admit evidence under an abuse-of-discretion standard. See Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App.
2000); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on
reh’g); Gurka v. State, 82 S.W.3d 416, 420 (Tex. App.—Austin 2002, pet. ref’d). As
long as the trial court’s ruling was within the zone of reasonable disagreement, the
appellate court will not reverse the ruling. Montgomery, 810 S.W.2d at 391.
          Officer Katrib’s Testimony
          Appellant complains of two separate instances of alleged backdoor hearsay
evidence introduced at trial. Appellant first complains of the following testimony by
Deputy Katrib on direct examination:
[State]: Okay. After you spoke with the mother, the
defendant’s mother, did you speak with anyone else? 
 
[Katrib]: Yes, ma’am, I did. 
 
[State]: And who was that you spoke with?
 
[Katrib]: The grandmother had indicated and from–
 
[Defense]: Excuse me, I’m going to object. 
 
[Court]: Don’t say what she said.
 
[Katrib]: Okay.
 
[Court]: Sustained.
 
[State]: I’ll continue, Judge. 
 
[Court]: You need–let’s go ahead right now. Don’t say
what anyone told you or what you learned by someone
telling it to you. 
 
[Katrib]: Okay.
 
[Court]: Unless you’re specifically asked and I rule on
whether it’s going to be hearsay or not. 
 
[Katrib]: Sure.
 
[Court]: Thank you. 
 
[State]: Who was the other person that you spoke with?
 
[Katrib]: I spoke to the three-year-old son. 
 
[State]: Okay. Prior to speaking with the three-year-old
son, did you ask permission from anyone?
 
[Katrib]: Yes, ma’am, I did. I asked the grandmother for
permission. 
 
[State]: Okay. Did you later then talk to the son?
 
[Katrib]: Yes, ma’am, I did.
 
[State]: Okay. Now, did you determine through your
investigation whether the child witnessed the offense?
 
[Katrib]: Yes, ma’am, I did.
 
[Defense]: Excuse me. Objection. It’s based on hearsay
what the child said. 
 
[Court]: Okay. Now so far you said, yes, you did
determine whether or not he was. But anything further
than that would be an answer based on hearsay. So, all we
know so far is you determined one way or another whether
or not he was a witness but not anything that’s going to be
based on hearsay.
 
[State]: Through your investigation that night, where did
you determine the children were during the assault? 
 
[Court]: I just want to make sure you’re not–what your
source is not being based on what someone told him.
That’s going to be hearsay. 
 
[State]: No, Judge, this is not based on what the mother or
the son told him. 
 
[Court]: Well, you’re going to have do–
 
[Defense]: Judge–
 
[Court]: Excuse me, Mr. Nugent. You need to be clear as
to the source of information; from his own personal
knowledge, what he witnessed, and not what’s it based on.
He can’t be generally what he learned from–generally from
his investigation. That’s why it would be hearsay. Unless
there’s a hearsay exception, then we’ll proceed then. 

(emphasis added). After this instruction from the court, the State abandoned that line
of questioning and moved on. After sustaining defense counsel’s first objection as
to what the mother told Officer Katrib, the State moved on to ask questions regarding
whether appellant’s son had witnessed the offense. 
          “Hearsay” is a statement, other than one made by the declarant while testifying
at trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid.
801(d). “Statement” is defined as “ (1) an oral or written verbal expression or (2)
nonverbal conduct of a person, if it is intended by the person as a substitute for verbal
expression.” Tex. R. Evid. 801(a). Hearsay is not admissible evidence unless
excepted by the rules of evidence, a statute, or a rule promulgated pursuant to
statutory authority. Tex. R. Evid. 802; Barnum v. State, 7 S.W.3d 782, 789 (Tex.
App.—Amarillo 1999, pet. ref’d).
          We find that Officer Katrib’s answer to the State’s question seeking to
determine whether or not Katrib discovered, through his investigation, if appellant’s
son had witnessed the offense was not inadmissible backdoor hearsay evidence. 
Katrib’s only response to the question indicated that he had discovered whether or not
the child had witnessed the offense. Katrib’s testimony did not reveal whether or not
the child witnessed the offense. The State never asked the follow-up question of what
Katrib had discovered through his investigation. The only question asked by the
State was whether or not he discovered if appellant’s son had witnessed the offense,
not what that investigation revealed. Therefore, no hearsay evidence was directly or
indirectly admitted because what the appellant’s son had revealed to Katrib was never
introduced into evidence through the testimony of Katrib. See Schaffer, 721 S.W.2d
594, 597 (Tex. App.—Corpus Christi 1986), affirmed, 777 S.W.2d 111, 113
(explaining that it is “this form of question and answer” that presents the jury with
information from unsworn, out-of-court sources that “should be called ‘backdoor’
hearsay and should be subject to the same rules and limitations as the more common
form.”) (emphasis added). 
          Appellant’s Mother’s Testimony
          Later, the State, again conducted a similar line of questioning during the cross-examination of appellant’s mother. Appellant complains of the following testimony: 
[State]: Do you recall–the three-year-old son was out there 
as well; isn’t that correct?
 
[Appellant’s mother]: Out where?
 
[State]: In the car when this happened?
 
[Appellant’s mother]: Yes.
 
[State]: Also, the three-year-old son was in the area when 
the officer was present, right? 
 
[Appellant’s mother]: Yes.
 
[State]: Do you recall the three-year-old son 
acknowledging that he saw his dad and his mom–
 
[Defense]: Excuse me, Judge. I’m going to object to their 
attempt to cross-examine the grandma about statements the 
three-year-old allegedly made.
 
[Court]: Response?
 
[State]: I’m asking her if she saw what the officer saw.
 
[Court]: Probably not the right objection, if there is one.
 
[Defense]: It’s hearsay.
 
[Court]: Is it hearsay?
 
[State]: It’s an excited utterance, Your Honor, and I’m 
asking if she knows or if she saw it. 
 
[Court]: You probably have to lay the predicate for excited 
utterance as far as the three-year-old for it to be excited 
utterance. Any other response? Otherwise, it would be 
hearsay at this point. 
 
[State]: Okay. 
 
[State]: Ma’am, what was the emotional state of the son 
during all of this?
 
[Appellant’s mother]: All this was terrifying and he was 
holding onto me. 
 
[State]: Very emotional?
 
[Appellant’s mother]: Yes. I love him so much. 
 
[State]: And do you recall the son acknowledging that he 
saw–
 
[Defense]: Excuse me, Judge. I’m going to object to 
hearsay. The prosecution has subpoenaed the little boy 
three times. They subpoenaed him to be here yesterday. If 
they want to call a three-year-old, that’s one thing, but to 
cross-examine grandma about statements that a three-year-
old allegedly made, through hearsay, is improper and I 
object. 
 
[Court]: Overruled. 
 
[State]: And my response, also, would be, Your Honor, 
we’re not going to call a three-year-old to the stand. The 
three-year-old has already been through enough. 
(emphasis added). After defense counsel’s last objection, the State dropped the line
of questioning and moved on to another topic. Appellant’s mother never answered
the question of whether she recalled her grandson’s acknowledging that he saw the
offense being committed. 
          Because there was never a response from appellant’s mother to the State’s
question regarding whether she recalled appellant’s son’s acknowledging that he had
witnessed the offense, there is no statement of a witness as defined in Texas Rule of
Evidence 801(a). See Tex. R. Evid. 801(a). Under the Texas Rules of Evidence, rule
801(a) provides that a “statement” is defined as “ (1) an oral or written verbal
expression or (2) nonverbal conduct of a person, if it is intended by the person as a
substitute for verbal expression.” Tex. R. Evid. 801(a). A “declarant” is “a person
who makes a statement.” Tex. R. Evid. 801(b). “Hearsay” is “a statement, other than
one made by the declarant while testifying at the trial or hearing, offered in evidence
to prove the truth of the matter asserted.” Tex. R. Evid. 801(d). The witness on the
stand, appellant’s mother, never answered the question and, therefore, her testimony
could not directly or indirectly prove that she had been told by appellant’s son that
he saw appellant commit the offense. 
          The Court of Criminal Appeals has stated that, even if an out-of-court
statement itself is not introduced, the hearsay rule may apply if testimony allows the
jury to ascertain the purport of the statement. Schaffer v. State, 777 S.W.2d 111, 114
(Tex. Crim. App. 1989); Gurka v. State, 82 S.W.3d 416, 420 (Tex. App.—Austin
2002, pet. ref’d). As in Schaffer v. State, the State attempted to indirectly elicit
hearsay testimony from appellant’s mother when it asked her whether she recalled if
appellant’s son, her grandson, acknowledged that he saw appellant hit his mother. 
See id. (holding that witness’ statement about not dropping charges against defendant
was inadmissible hearsay because testimony indirectly proved that witness had been
told that defendant was not an informer). Here, unlike in Schaffer, the State
abandoned this line of questioning before the witness could introduce the hearsay
testimony of appellant’s son. Schaffer is not applicable to this case because the trial
court did not improperly allow the State to introduce hearsay testimony before the
jury. 
          Accordingly, we overrule appellant’s fourth point of error.
Prosecutorial Misconduct
          In his fifth point of error, appellant contends that he was denied a fair trial. 
Specifically, appellant complains that the cumulative effect of improper actions on
the part of the trial court and of the prosecutor created a coercive atmosphere, which
operated to violate his rights to a fair trial and effective assistance of counsel under
the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
          Every person accused of a crime is entitled to a fair trial. See Bethany v. State,
814 S.W.2d 455, 456 (Tex. App.—Houston [14th Dist.] 1991, writ ref’d); see e.g.,
Henley v. State, 576 S.W.2d 66, 69 (Tex. Crim. App. 1978). As the Supreme Court
and the Court of Criminal Appeals have noted, “the atmosphere essential to the
preservation of a fair trial–the most fundamental of all freedoms–must be maintained
at all costs.” Estes v. Texas, 381 U.S. 532, 540, 85 S. Ct. 1628, 1632 (1965); Taylor
v. State, 420 S.W.2d 601, 607 (Tex. Crim. App. 1967). In this regard, it is the duty
of both the trial court and the prosecutors to conduct themselves so as to ensure that
an accused receives a fair trial. Bethany, 814 S.W.2d at 456; Tex. Code Crim. Proc.
Ann. art. 2.03(b) (Vernon 1977). In addition, an accused is entitled to the assistance
of an attorney who will play the critical role necessary in our adversarial system to
ensure that the trial is fair. See Strickland v. Washington, 466 U.S. 668, 685-86, 104
S. Ct. 2052, 2063-64 (1984).
          In an appeal of this nature, it is the fundamental purpose of an appellate court
to ascertain whether or not the convicted defendant received a fair trial in the court
below. See Ex parte Adams, 768 S.W.2d 281, 293 (Tex. Crim. App. 1989); Bethany,
814 S.W.2d at 456. In making this determination, any indication of prejudice or
opinion of guilt on the part of the trial judge requires close scrutiny of his actions. 
See Zima v. State, 553 S.W.2d 378, 380 (Tex. Crim. App. 1977). Likewise, although
the character of a prosecutor does not necessarily dictate the fairness of a trial, the
conduct and discretion of the prosecutors in this case will be necessarily involved in
our analysis. See Ex parte Adams, 768 S.W.2d at 293.
          In support of this point of error, appellant delineates seven instances of judicial
and prosecutorial misconduct, which he contends resulted in the deprivation of his
constitutional rights. Appellant reiterates the alleged errors outlined in his first four
points of error


 and includes two other alleged errors by the State, as well as a failure
by the trial court to rule on a defense objection.


 
          The proper method of preserving error in cases of prosecutorial misconduct is
to (1) object on specific grounds, (2) request an instruction that the jury disregard the
comment, and (3) move for a mistrial. Penry v. State, 903 S.W.2d 715, 764 (Tex.
Crim. App. 1995); Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993). 
Appellant made no objection on the basis of prosecutorial misconduct in the trial
court to the previously addressed alleged errors or the newly alleged errors. By
failing to object on this theory at trial, appellant has preserved nothing for our review. 
See Perkins v. State, 902 S.W.2d 88, 96 (Tex. App.—El Paso 1995, writ ref’d). 
          Although appellant alleges that he was denied assistance of counsel at trial, he
does not cite any specific instances of what trial counsel did that contributed to the
allegedly coercive atmosphere created by the “cumulative effect of judicial and
prosecutorial misconduct during the trial.” This Court is not required to sift through
the record in search of support for appellant’s broad assertions of error. See Tex. R.
App. P. 38.1(h); Lawton v. State, 913 S.W.2d 542, 554 (Tex. Crim. App. 1995).
          Appellant offers no argument, authority, or citation to the record to explain
how his representation fell below the standard of prevailing professional norms by
his trial counsel’s failure to object to the instances of judicial and prosecutorial
misconduct alleged in this point of error. With respect to the references to appellant’s
first four points of error, we have found no misconduct on the part of the trial court;
and appellant has cited no authority from which we could conclude that appellant’s
trial counsel’s conduct fell below a professional standard because his counsel failed
to object to those alleged instances of prosecutorial misconduct. 
          An appellant bears the burden of proving by a preponderance of the evidence
that his counsel was ineffective. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim.
App. 1999). We cannot speculate beyond the record provided; rather, a reviewing
court must presume that the actions were taken as part of a strategic plan for
representing the client. Young v. State, 991 S.W.2d 835, 837-38 (Tex. Crim. App.
1999). The appellant must overcome the presumption that his trial counsel’s strategy
was sound and affirmatively demonstrate the alleged ineffective assistance of counsel. 
Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); Thompson, 9 S.W.3d
at 813-14. Appellant has failed to carry his burden of proof. 
          We overrule appellant’s fifth point of error. 
CONCLUSION
          We affirm the judgment of the trial court.
 
 
 
                                                             Sherry Radack
                                                             Chief Justice


Panel consists of Chief Justice Radack and Justices Keyes and Alcala.
Publish. Tex. R. App. P. 47.2(b).