**AFFIRMED; Opinion Filed December 29, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01086-CR

**ADRIAN ROOSEVELT MCDANIEL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F-14-57440-H**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Lang

Following a plea of not guilty, appellant Adrian Roosevelt McDaniel was convicted by a jury of aggravated assault. Appellant pleaded not true to two enhancement paragraphs which the jury found to be true. Punishment was assessed by the jury at fifty years' imprisonment. Appellant raises two issues. His first issue asserts that the trial judge made comments and exhibited conduct that constitute fundamental error because they reflect bias and partiality. Appellant's second issue asserts that he received ineffective assistance of counsel.

We decide both issues against him. The trial court's judgment is affirmed. Because the law to be applied in this case is well settled, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2, 47.4.

## I. Factual and Procedural Context

Appellant was originally indicted and tried for aggravated assault with a deadly weapon and possession of marijuana. He entered a plea of not guilty to the charges. The State provided appellant notice of its intent to enhance the punishment ranges through proof of appellant's two prior felony convictions. The original jury convicted appellant of the marijuana possession charge, but was unable to reach a verdict as to the aggravated assault charge. A mistrial was declared as to the aggravated assault charge. During the second trial for the aggravated assault charge, appellant again entered a plea of not guilty.

The State presented seven witnesses, one of whom was the person who was assaulted. Appellant was presented as the sole defense witness.

Testifying for the State, Corporal R. Villalba related the facts of the investigation and arrest of appellant. He said he received a call from Parkland Hospital on the evening of the assault. The hospital reported the admission of an individual (referred to here as S.P.) into the intensive care unit (ICU) who claimed he had been assaulted. Corporal Villalba responded to the call and went to the hospital to interview S.P. The injuries were described by Corporal Villalba to the jury. Villalba testified S.P. identified appellant as his assailant and that his injury occurred at appellant's apartment. Then, Villalba went to appellant's apartment along with other officers to investigate. There, appellant refused entry by the officers. So, they waited for a warrant. Later, with warrant in hand, Villalba and the other officers entered appellant's apartment. Villalba arrested appellant for aggravated assault, transported appellant to jail, and prepared the arrest report. In concluding his testimony, Villalba identified a picture of appellant as the same person at the apartment that night. Appellant was the only person in the apartment.

Also testifying for the State was Detective Marshall McLemore. He took photographs of the crime scene at appellant's apartment. McLemore also collected evidence from appellant's

apartment: a dumbbell; a guitar; a blood-stained towel; and samples of blood stains from the couch, the bathroom floor, and living room wall. When McLemore finished collecting evidence, he went to Parkland Hospital and photographed S.P.'s injuries. After that, he went to the Dallas Police Department headquarters and photographed appellant's hands, back, and face. He also collected the blood-stained tennis shoes that appellant was wearing at the time appellant was arrested.

Michelle Sharp, a forensic biologist at the Southwestern Institute of Forensic Scientists (SWIFS), then testified she had analyzed the evidence brought to her from appellant's apartment and person. Specifically, she analyzed blood on appellant's shoes, a sample of fabric taken from appellant's couch, and a towel taken from appellant's apartment. Then, Courtney Ferreira, another forensic biologist for SWIFS, testified that it was in fact S.P.'s blood found on the items.

Next, Detective Rudy Contreras testified that, when the appellant was brought to the police station for an interview after his arrest, he saw appellant wearing the blood-splattered tennis shoes analyzed by SWIFS. Detective Contreras directed McLemore to collect the tennis shoes from appellant at the police station. Contreras also had a blood sample collected from S.P. to send to SWIFS, in order to compare to the blood collected from the appellant's tennis shoes.

S.P. then testified. S.P. identified appellant as the person who assaulted him by beating him with a dumbbell and then a guitar. He explained he and appellant were at appellant's apartment when appellant accused S.P. of taking appellant's marijuana. S.P. denied this, but appellant continued to beat him. After the assault, appellant took S.P.'s blood-soaked shirt from him and "walked" S.P. out of the apartment. Appellant told S.P. to bring him $500 to pay for the marijuana that he thought S.P. had taken. S.P. said he "ran down the street" to "some empty apartments." There he "just sat down for a minute to get [himself] together." When S.P. returned to his apartment, his roommate at that time, Cynthia Pouncey, called an ambulance. S.P. was

transported to Parkland Hospital where he remained in the ICU for six days. He sustained numerous injuries, including a subdural hematoma, facial fractures, and bruising. S.P. could not walk for over a month.

At this point, Roy Jenkins testified. He was an investigator for the Dallas District Attorney. Jenkins authenticated recordings of calls made between appellant and others while appellant was in jail. In many of these calls appellant asked friends and family members to help dissuade S.P. from testifying. On one call, appellant's sister told appellant she did not think S.P. would show up to testify. In response, appellant said, "It would be better if we knew he wouldn't come."

Appellant testified on his own behalf. He named another man, who went by the name "West Dallas," as the one who assaulted S.P. According to appellant, when S.P. started fighting with West Dallas, appellant just "got up and left." When appellant returned to the apartment, people in the neighborhood were telling him that somebody got hurt. Appellant said he had nothing to do with this assault and had never assaulted anybody. Upon cross-examination, appellant admitted that he had been previously convicted of a Class A assault, among other convictions. Appellant also denied owning the shoes on which S.P.'s blood was found. However, appellant admitted that he was wearing those shoes during the day in question. He said the shoes had blood on them because people were "fighting over" him.

As stated above, the jury convicted appellant of aggravated assault with a deadly weapon and appellant was sentenced to fifty years' imprisonment. The jury also found appellant had been convicted of two prior felony offenses. This appeal followed.

## II. Judicial Bias

In his first issue, appellant complains that the trial judge was "biased" and, as demonstrated by his comments and actions, "expressly and implicitly conducted [himself] as an

adversarial advocate against appellant." Appellant did not raise this complaint at trial. He acknowledges that generally a complaint not raised at trial is not preserved for appellate review. *See* TEX. R. APP. P. 33.1 (requiring objection at trial to preserve error for appellate review). However, he argues no objection was necessary because the judge's comments and actions constituted fundamental error. *See Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000) (plurality op.) (noting Texas Rule of Evidence 103(d) allows appellate courts to take "notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court.").

The State asserts appellant waived his complaint about any such error because he failed to timely object and obtain a ruling. The State also maintains, inter alia, that the judge's comments and actions were proper. Even if improper, the State argues, the statements were not "so egregious as to deem the judge biased" and do not constitute fundamental error. *See Hernandez v. State*, 268 S.W.3d 176, 184 (Tex. App.—Corpus Christi 2008, no pet.) (issue of judicial bias may be raised for first time on appeal only if trial judge's conduct was so egregious as to deem him biased); *McIntosh v. State*, 855 S.W.2d 753, 760 (Tex. App.—Dallas 1993, pet. ref'd) (fundamental error must be so egregious and create such harm that the defendant was denied fair and impartial trial).

### A. Error Preservation

In this situation, the court of criminal appeals directed us to apply the test for dealing with unassigned error stating, "when deciding whether a Texas appellate court may address unassigned error, the applicable test is set forth in *Marin v. State*." *Brumit v. State*, 206 S.W.3d 639, 644 (Tex. Crim. App. 2006) (citing *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997)); *see Sanchez v. State*, 120 S.W.3d 359, 365–66 (Tex. Crim. App. 2003).

In *Marin* the court of criminal appeals identified three categories of rights belonging to litigants: "(1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigations which are to be implemented upon request." 851 S.W.2d at 279. Appellant argues the facts of this case fall within the first category, concerning "absolute requirements and prohibitions." Appellant contends these rights are not subject to the preservation requirements of rule of appellate procedure 33.1. *See Sanchez*, 120 S.W.2d at 366; *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003); *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002); *see also Williams v. State*, 273 S.W.3d 200, 220 (Tex. Crim. App. 2008) (failing to object at trial generally waives complaint for appeal) (citing *Marin*, 851 S.W.2d at 279). A violation of a non-waivable, absolute, systemic right constitutes fundamental error. *See Saldano*, 70 S.W.3d at 887–88; *Marin*, 851 S.W.2d at 278 ("Some rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system. TEX. R. CRIM. EVID. 103(d). A principle characteristic of these rights is that they cannot be forfeited.").

In *Blue v. State*, a plurality[1] of the Texas Court of Criminal Appeals concluded[2] that a trial judge's comments during jury selection, which indicated the trial judge would have preferred for the defendant to plead guilty, constituted fundamental error because the statements tainted the presumption of innocence. *Blue*, 41 S.W.3d at 132. On that record, the court of criminal appeals concluded no objection was required to preserve error for appellate review. *Id.*

---

[1] "A 'plurality opinion' is that opinion in a fractured decision that was joined by the highest number of judges or justices. Plurality opinions do not constitute binding authority. But a fractured decision may constitute binding authority if, and to the extent that, a majority holding can be ascertained from the various opinions in the case. Even if the rationales seem disparate, if a majority of the judges agree on a particular narrow ground for or rule of decision, then that ground or rule may be viewed as the holding of the court." *Unkart v. State*, 400 S.W.3d 94, 100–101 (Tex. Crim. App. 2013).

[2] In *Blue*, "[a] plurality of the Court decided that the trial judge's remarks vitiated the defendant's presumption of innocence." *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013). "Judge Mansfield, who was part of the plurality, also filed a concurring opinion, in which he concluded that the doctrine of procedural default 'does not apply to statements made by a trial judge that rise to the level of fundamental error.'" *Id.* "Judge Keasler concluded that the trial judge's remarks were so egregious as to show that he was biased." *Id.* "Judge Meyers concurred in the judgment without stating a rationale" *Id.*

Later, in *Jasper v. State*, the court of criminal appeals concluded that, even if it were bound to follow the plurality opinion in *Blue*, the trial judge's comments on the record in *Jasper* did not constitute fundamental error. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). In *Jasper* the trial judge's comments consisted of: correcting defense counsel's misrepresentation of previously admitted testimony, showing irritation toward the defense attorney, and clearing up a point of confusion on whether the State had in their possession a written statement made by a particular witness. *Id.* According to the court of criminal appeals, these comments failed to rise to "such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury" and therefore, were not fundamental error. *Id.*; *see also Murchison v. State*, 93 S.W.3d 239, 262 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (stating that trial court may interject to correct misstatement or misrepresentation of previously admitted testimony).

Then in *Brumit*, though recognizing the plurality in *Blue*, the court of criminal appeals concluded that it need not reach the issue of whether the judge's comments during sentencing constituted fundamental error because the judge's comments did not reflect bias or partiality. *Brumit*, 206 S.W.3d at 644–45 (distinguishing *Blue*, 41 S.W.3d at 132). In *Brumit* the trial judge made several comments during sentencing. *Id.* at 640. One comment made by the trial judge was that previous cases he had been involved with "made [him] think that anybody that ever harmed a child should be put to death." *Id.* Comments such as this were made after the judge had heard extensive evidence of the defendant's repeated sexual abuse of two children. *Id.* at 644–45. The defendant had six prior convictions for child sexual assault. *Id.* Therefore, the court of criminal appeals concluded this comment did not demonstrate the trial judge had failed to consider the full range of punishment and the comments did not violate due process stating, "Due process requires a neutral and detached hearing body." *Id.* at 645. However, "[a]bsent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Id.*; *see also Gordon v. State*,

191 S.W.3d 721, 726–27 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that when judge had not commented on defendant's guilt or innocence, his comments during voir dire did not constitute fundamental error); *Davis v. State*, 651 S.W.2d 787, 790 (Tex. Crim. App. 1983) (holding that judge's comment to veniremen, although not proper instruction, did not imply that defendant would be convicted, was not reasonably calculated to benefit or prejudice defendant, and thus was not reversible error).

### B. Standard of Review

"Absent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Brumit*, 206 S.W.3d at 645. Courts enjoy a "presumption of judicial impartiality." *Abdygapparova*, 243 S.W.3d at 198. In determining on appeal whether a clear showing of bias has been made, we review the entire record. *See Avilez*, 333 S.W.3d at 673–75; *see also Dockstader*, 233 S.W.3d at 108.

### C. Applicable Law–Judicial Bias, Generally

The Fourteenth Amendment provides that the State may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Due process requires a neutral and detached hearing body or officer. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). A defendant is entitled to a fair trial "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997); *Avilez v. State*, 333 S.W.3d 661, 673 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Accordingly, a judge should not act as an advocate or adversary for any party. *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). When an appellant claims judicial bias, we review the record to see if it shows the judge's bias denied due process of law. *Armstrong v. State*, No. 05–

10–01246–CR, 2011 WL 6188608, at \*5 (Tex. App.—Dallas Dec. 14, 2011, no pet.) (not designated for publication).

The terms "bias" and "prejudice" do not include all unfavorable rulings towards an individual, but instead must "connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree." *Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd) (citing *Liteky v. United States*, 510 U.S. 540, 550 (1994)). Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Dockstader*, 233 S.W.3d at 108. "Such remarks may constitute bias if they reveal an opinion deriving from an extrajudicial source." *Id*. "However, when no extrajudicial source is alleged, such remarks will constitute bias only if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. Moreover, "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality. *Liteky*, 510 U.S. at 555–56. A "judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Garcia v. State*, 246 S.W.3d 121, 147 (Tex. App.—San Antonio 2007, pet. ref'd) (quoting *Liteky*, 510 U.S. at 556).

### D. Analysis of First Issue

We address appellant's first issue by analyzing each of six comments and actions of the trial judge which appellant claims demonstrate the trial judge's bias: (i) the trial judge's statement about "beyond a reasonable doubt" during voir dire and the statement about "beyond a reasonable doubt" in the jury charge; (ii) the trial judge's statement about the potential sequence of events during voir dire; (iii) the trial judge's statement to appellant about how the State would

–9–

likely proceed in his absence; (iv) the trial judge shaking his head "no" after defense counsel told appellant he would have a limited right to appeal issues raised pretrial if he pled guilty pursuant to a plea agreement; (v) the trial judge's admonishment of defense counsel during defense counsel's opening statement; and (vi) the trial judge's rulings on defense counsel's objections.

### 1. Statements about "Reasonable Doubt"

Appellant argues that the combination of the trial judge's purportedly biased statements to the venire along with the written jury charge, constituted fundamental error. The State contends that the trial court's statements "provided the prospective jurors with the lawful parameters of reasonable doubt" and "did not advocate against appellant's presumption of innocence or shift or lower the State's burden of proof." We agree with the State.

The trial court's written charge to the jury included the following sentence: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." Both parties affirmatively stated that they had no objections to the written jury charge.[3]

Additionally, in addressing the venire the trial judge made the following statements:

In a criminal case the Defendant starts out winning. . . **The State has to prove this case by beyond a reasonable doubt**. . .

Okay. So the scales are tipped in the Defendant's favor, and the State has to move their scales all the way, pretty much all the way the other way to beyond a reasonable, **beyond a doubt based on reason and common sense.** There's not really any other definition that I can give you of what beyond a reasonable doubt means; it's really kind of personal to each juror. **But it is the highest burden in our legal system. It's beyond a doubt based on reason and common sense**, what's been alleged in the Indictment, which you will hear read to you if you're picked as a juror, and it will all be in the Court's charge and in the evidence, that

[3] The reporter's record reads as follows:
The Court: We're on the record. We're outside the presence and hearing of the jury. The Court has tendered charges to both parties. Is there any objection from the State?
Mr. McMillin: No, Your Honor.
The Court: From the Defense?
Mr. Schopmeyer: There's no objection from the Defense.
The Court: All right.

the State has to prove their case beyond a reasonable doubt. So does everybody understand that? Beyond a reasonable doubt is the measuring stick that you evaluate all the evidence. You evaluate all the evidence. **Am I convinced beyond a reasonable doubt based on reason and common sense that the Defendant done what he's charged with.** So can everybody understand that and follow that instruction? Everybody good with that? . . .

(emphasis added).

### a. Applicable Law–Reasonable Doubt

"In the Texas adversarial system, the judge is a neutral arbiter between the advocates; he is the instructor in the law to the jury, but he is not involved in the fray." *Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003). In Texas, jurors must decide for themselves what "proof beyond a reasonable doubt" means. *Murphy v. State*, 112 S.W.3d 592, 597 (Tex. Crim. App. 2003). According to the court of criminal appeals, jurors must supply the precise meaning of it for themselves "according to their own common-sense understanding of the words." *Fuller v. State*, 363 S.W.3d 583, 587 (Tex. Crim. App. 2012). It is important to "foster the selection of jurors who will not impose a standard of proof upon the State that they know for sure to be either too lenient (preponderance or even clear and convincing) or too burdensome (*all* doubt)." *Id*.

In *Geesa v. State* the court of criminal appeals had expressly adopted a jury instruction on "reasonable doubt" that included the following sentences:

> It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

> A 'reasonable doubt' is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. . . .

*Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), *overruled by Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). The court held that this instruction had to be submitted to the jury in all criminal cases. *Id*. In *Paulson v. State* the court of criminal appeals "specifically overrule[d] that portion of *Geesa* which require[d] trial courts to instruct juries on the definition of 'beyond a reasonable doubt,'" concluding that the instructions mandated by *Geesa* were

–11–

"redundant, confusing, and logically-flawed." *Paulson*, 28 S.W.3d at 573. Referring specifically to the portion stating that "[a] reasonable doubt is a doubt based on reason and common sense" the court found that the instruction was "useless" and circular. *Id*. In overruling *Geesa,* the court found that the "better practice is to give no definition of reasonable doubt at all to the jury." *Id*. However, the court did not prohibit the practice. *Id*. Further, the court stated that if both parties agree to the instruction, it is not reversible error. *Id*.

### i. Reasonable Doubt–Alleged Error in the Jury Charge

Appellate review of an alleged error in the jury charge involves two steps. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). The first step is to determine if the jury charge was erroneous. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If erroneous, the next step is to determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When no objection was made at trial, the error must be fundamental and is reversible "only if it was so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). This court assesses harm in light of the entire record. *Id.*

### ii. Reasonable Doubt–Alleged Error in Statements to the Venire

"Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial." *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013). However, the court of criminal appeals has reviewed a complaint alleging an improper judicial comment that was not

preserved at trial. *See Blue*, 41 S.W.3d at 134–38. In *Blue* a plurality[4] of the court of criminal appeals found that the trial judge's remarks "'vitiated the presumption of innocence' before the venire, adversely affecting [the] appellant's right to a fair trial", which was reversible error, as either fundamental error or because the comments were so egregious as to demonstrate judicial bias. *Id.* at 132, 134–38. There the trial judge expressed his own personal views about the appellant's guilt and decision to exercise his right to trial. *Id.*

In contrast with the decision in *Blue* is the holding in *Haro v. State*. 371 S.W.3d 262, 264 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). There, the trial judge made the following statement to the venire: "But ultimately, you, individually, g[e]t to decide what beyond a reasonable doubt means to you. I've heard people say that it is an intellectual exercise based on reason, common sense and logic." *Haro v. State*, 371 S.W.3d 262, 264 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The court of appeals found this comment did not taint the presumption of innocence owed to the defendant or improperly apply the beyond-a-reasonable-doubt standard to the case before it. *Id.* at 266. Similarly, in *McEuen* the trial judge gave the following written instruction to the jury: "A 'reasonable doubt' is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case." *McEuen v. State*, No. 14–08–00941–CR, 2009 WL 2476540, at *2 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (mem. op., not designated for publication). There, the court of appeals noted that this specific language, taken from a portion of *Geesa*, was determined by the *Paulson* court to be "useless" rather than "erroneous." *Id.* Therefore, its inclusion was not error, much less fundamental error and did not demonstrate judicial bias. *Id.*

---

[4] *See* footnote 1 *supra*, for the definition of "plurality."

### b. *Application of Law to the Facts*

After *Paulson*, courts were split as to whether the inclusion of a portion of the former *Geesa* instructions in a jury charge constituted error. *See Burrows v. State*, 492 S.W.3d 398, 407–10 (Tex. App.—Houston [1st Dist.] 2016, no pet. h.) (summarizing the split). This Court concluded in *O'Canas* that the specific language used,[5] which appellant complains of in this case, did not define reasonable doubt and thus, its inclusion in the jury charge is not error. *O'Canas v. State*, 140 S.W.3d 695, 701–02 (Tex. App.—Dallas 2003, pet. ref'd). Since *O'Canas* this court has rejected the opportunity to reconsider that holding. *Bates v. State*, 164 S.W.3d 928, 931 (Tex. App.—Dallas 2005, no pet.); *Chapin v. State*, No. 05–15–01009–CR, 2016 WL 4421570, at *6 (Tex. App.—Dallas Aug. 19, 2016, no pet.) (mem. op., not designated for publication). The court of criminal appeals in *Woods v. State* held that a trial court did not "abuse its discretion" in giving this same instruction. *Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004); *see also Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) (affirming *Woods*). Accordingly, we conclude it was not error for the trial court to include the sentence of which appellant complains in the jury charge, much less fundamental error.

Additionally, the trial judge's comments neither tainted the presumption of innocence nor clearly reflected bias. *Cf. Blue*. Indeed, when read in context, it is clear the trial judge made it clear that the beyond-a-reasonable-doubt standard is the highest in the legal system. Appellant has not cited any case law, nor can we find any, where a trial judge's statements during voir dire regarding the meaning of reasonable doubt tainted the presumption of innocence. *See Latson v. State*, 440 S.W.3d 119, 121–22 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Wilkerson v. State*, 347 S.W.3d 720, 725–26 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). We conclude

---

[5] As indicated above, appellant complains that the written jury charge contained the sentence: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." This is paragraph three from the *Geesa* instructions, the same paragraph that this Court addressed in *O'Canas*. *See O'Canas*, 140 S.W.3d at 699–702.

–14–

these comments do not rise to the level of fundamental error. *See* TEX. R. APP. P. 33.1*; Brumit*, 206 S.W.3d at 644–45; *Jasper*, 61 S.W.3d at 421; *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999). Accordingly, we further conclude appellant waived error by failing to object to the trial court's comments.

### 2. Statement to Venire about Potential Sequence of Events

During voir dire the trial judge made the following statements regarding the range of punishment:

> Okay. So remember that question is, if I heard facts that justified the minimum, could I do it? If I heard facts that justified the maximum, could I do it? And I'm kind of -- I'm being kind of purposefully. I can't -- the lawyers can't give you any of the facts.
>
> All right. The reason I mentioned that is because if the Defendant's convicted, it will be the jury's duty to assess punishment. . . . **So, now, if it's an acquittal, then, obviously, we all go home.** But if the Defendant is convicted as charged, it will be the jury's duty to set his punishment. And that's why I mentioned to you the range of punishment.

(emphasis added).

Appellant argues that the "if it's an acquittal, then, obviously, we all go home" statement "incorrectly informed the eventual jurors that an acquittal of appellant would result in appellant's immediate release into the community, which—in addition to being inaccurate as a matter of pure, objective fact—could have in no way accrued to appellant's benefit." Appellant argues that this allegedly biased statement amounts to fundamental error. We disagree.

### a. Applicable Law–Statements to Venire

Appellant relies on *Abdygapparova v. State* and *Bethany v. State* in support of his contention that the trial judge's explanation of a potential sequence of events was biased and prejudicial. *Abdygapparova*, 243 S.W.3d at 208–10. (Tex. App.—San Antonio 2007, pet. ref'd); *Bethany v. State*, 814 S.W.2d 455, 461 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). However, those cases are distinguishable.

–15–

In *Abdygapparova*, the trial judge engaged in numerous ex parte communications with the prosecutor during voir dire, passing notes and providing guidance on how the State should proceed. *Abdygapparova*, 243 S.W.3d at 208–10. Additionally "the record as a whole demonstrated a bias" because of the "admission of damaging evidence that clearly should not have been admitted" and the fact that the trial court did not allow an interpreter. *Wilson v. State*, No. 05–12–00831–CR, 2013 WL 4399193, at *7 (Tex. App.—Dallas Aug.15, 2013, no pet.) (mem. op., not designated for publication) (citing *Abdygapparova*, 243 S.W.3d at 199–204).

Similarly, the trial judge in *Bethany* also engaged in ex parte communications with the prosecutors for the State. *Bethany*, 814 S.W.2d at 461. The trial judge in *Bethany* also: (i) reviewed the evidence himself and brought to the attention of the prosecutors what he perceived to be discrepancies in the evidence; (ii) interrogated defense counsel about the evidence; (iii) disqualified a witness on his own motion; and (iv) suggested in front of the jury that the defense was trying to mislead the jurors, among other acts. *Id*.

### b. Application of Law to the Facts

*Abdygapparova* and *Bethany* are distinguishable from the case now before us. A review of the record in this case reveals the trial judge's statement explained a potential sequence of events: either the jury would convict and assess punishment or it would acquit and, as the judge put it, "we all go home." The trial judge made this statement in the context of explaining to the jury the range of punishment and that it would be their job as the jury, rather than his, to assess punishment, should they choose to convict the appellant. The record demonstrates the trial judge was referring to the jury and himself as the "we" in the statement and was not including the appellant. On this record we conclude there was no attempt to mislead, or even inform, the jury about appellant's potential release status. Accordingly, the statement complained of does not rise

–16–

to the level of fundamental error. We conclude because no objection was made at trial by appellant, this point is waived. *See Unkart*, 400 S.W.3d at 99; *Jasper*, 61 S.W.3d at 421.

### 3. Statement to Appellant about Potential Consequences of His Absence from the Courtroom

Prior to the start of the trial and outside the presence of the jury the trial judge held a brief hearing. During this hearing appellant expressed a desire to be absent during the proceedings. Appellant asked the trial judge, "Can you explain to me what will take place if I'm out of the courtroom, because I don't know." The judge responded, "We'll have the trial, just like you're here, except the witnesses will have to identify you from the photograph."

Appellant argues that this response from the trial judge constitutes fundamental error as adversarial advocacy. Specifically, appellant argues that it "informed the State regarding what the State needed to do in order to try to prove that Appellant committed the offense in the event Appellant absented himself from the courtroom." We disagree.

### a. Applicable Law–Statements to Appellant

Appellant has not cited any case holding the above statement of the trial court constitutes fundamental error. Instead, appellant again relies on *Abdygapparova v. State* and *Bethany v. State* in support of his contention that the trial judge's explanation of how the State would likely proceed was biased and prejudicial. *Abdygapparova*, 243 S.W.3d at 208–10. (Tex. App.—San Antonio 2007, pet. ref'd); *Bethany v. State*, 814 S.W.2d 455, 461 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). Again, those cases are distinguishable.

### b. Application of Law to the Facts

Appellant argues this statement was biased and constituted adversarial advocacy because it "informed the State regarding what the State needed to do in order to try to prove that Appellant committed the offense in the event Appellant absented himself from the courtroom." However, the record shows this statement was in response to appellant's question about the

–17–

procedure and the trial judge simply responded that the trial would continue, despite appellant's absence. Given the presumption of impartiality that the trial court enjoys and on this record, the trial judge was not "so entangled in the role of an advocate that [he] lost [his] ability to remain neutral and detached." *Hill v. State*, No. 05–14–01445–CR, 2016 WL 1554932, at *5 (Tex. App.—Dallas Apr. 14, 2016, no pet.) (mem. op., not designated for publication).

Additionally, unlike the trial court's comments in *Blue*, this comment was made outside the presence of the jury. *See Blue*, 41 S.W.3d at 130 (the complained-of conduct occurred in front of the jury and constituted clear bias). We conclude the trial court did not err in making the statement.

### 4. Act of Shaking His Head "No" After Defense Counsel Told Appellant He Would Have a Limited Right to Appeal

Just after the brief hearing that occurred prior to the start of trial, still outside the presence of the jury, the State offered to waive a jury and permit appellant to plead guilty, in exchange for appellant's acceptance of a sentence of imprisonment for ten years. Appellant asked his trial counsel, "Do I have a right to appeal?" Appellant's trial counsel answered, "You have a right to a limited appeal [sic] the *issues that were ruled on prior to trial and heard by the Court. . . .*" (emphasis added). Before appellant's trial counsel finished explaining his answer, appellant said, "He's shaking his head 'no.'" The trial judge then stated, "Look. He knows the offer. If he's going to take it, he's going to take it. If not, let's get going."

Appellant argues that the alleged act of shaking his head "no" constituted fundamental error as bias on the part of the trial judge. We disagree.

#### a. Applicable Law–Conduct of, Gestures made by the Trial Judge

"A defendant in a criminal case has the right to appeal only those matters that were raised by written motion filed and ruled on before trial." TEX. R. APP. P. 25.2(a)(2)(A). Furthermore, to constitute bias a comment must reflect a "deep-seated favoritism or antagonism." *Liteky*, 510

–18–

U.S. at 555. In *Liteky*, the Supreme Court of the United States gave an example of the type of comment that displays bias. *Id*. For example, in a World War I espionage case against German-American citizens the trial judge's comment that German-Americans have hearts "reeking with disloyalty" was biased and reflected partiality. *Id*. "*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id*. at 555–56.

### b. Application of Law to the Facts

We note initially, the record is not clear that the appellant was referring to the trial judge when he stated "He's shaking his head 'no.'" Furthermore, even assuming it was the trial judge to whom appellant referred, we conclude this action does not rise to the level of "deep-seated ... antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

In one line of his brief, appellant argues that the trial judge's conduct "runs dangerously close to the type of conduct that would amount to an outright violation of the law that expressly prohibits trial courts from engaging in plea bargaining or plea negotiations." Since appellant concedes that it is "close to" unlawful conduct, but does not rise to the level of that conduct, we have nothing to review. Furthermore, this Court does not look outside an appellate brief for arguments in support of an issue when doing so would circumvent the briefing limitations that we have previously extended in this case. *See* TEX. R. APP. P. 9.4(i); TEX. R. APP. P. 38.1(i).

### 5. Comment During Defense Counsel's Opening Statement

Appellant's trial counsel began his opening statement with the following words:

Ladies and gentlemen of the jury, you may be looking over here thinking this is an unusual situation, and it is. But the law does not change. I just want to remind you that as you sit through the witnesses the State presents to you over the next day or so, the obligation, the burden . . . .

At this point the trial judge interrupted defense counsel and stated, "Mr. Schopmeyer, what do you expect the evidence to show? It's not about the evidence. This is not an opening argument." Defense counsel responded, "Oh, okay." And continued with his statement.

Appellant argues that the trial judge's interjection was biased. Appellant argues that, by effectively objecting on his own initiative—at a time when the State had not yet objected to defense counsel's opening—it was fundamental error for the trial judge to make that comment. We disagree.

### a. Applicable Law–Comments made by the Trial Judge

As we previously indicated, remarks that are "critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality. *Id*. at 555–56. Further, tone and demeanor are not apparent from a cold record. *Wilson v. State*, No. 05–12–00831–CR, 2013 WL 4399193, at *7 (Tex. App.—Dallas Aug.15, 2013, no pet.) (mem. op., not designated for publication) (citing *Abdygapparova*, 243 S.W.3d at 199–204). A "judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id*. at 556. The court of criminal appeals has stated, "We have held that trial courts have broad discretion in determining the length of arguments during a trial." *Dang v. State*, 154 S.W.3d 616, 619 (Tex. Crim. App. 2005) (citing *Hernandez v. State*, 506 S.W.2d 884, 886 (Tex. Crim. App. 1974)). Similarly, the trial court has "the inherent power to control the orderly proceedings in the courtroom. . . ." *Alexander v. State*, 282 S.W.3d 143, 146 (Tex. App.—Texarkana 2009, pet. ref'd). A defense counsel's opening statement is limited to "[t]he nature of the defenses relied upon and the facts expected to be proved in their support." TEX. CODE CRIM. P. ANN. art. 36.01(a)(5).

–20–

### b. Application of Law to the Facts

Appellant again relies on *Abdygapparova* and *Bethany* in support of his contention that the trial judge's comment to defense counsel during his opening statement was biased and prejudicial. *Abdygapparova*, 243 S.W.3d at 208–10. (Tex. App.—San Antonio 2007, pet. ref'd); *Bethany*, 814 S.W.2d at 461. Again, those cases are distinguishable from the case before us. In *Abdygapparova* the court of appeals concluded that the ex parte communications between the judge and the prosecutor were "not simply 'expressions of impatience, dissatisfaction, annoyance, and even anger' toward Abdygapparova or her counsel," but were examples of the trial court "providing guidance to the prosecutor on the presentation of his case" and inappropriately discussing the "trial court's initial ruling regarding Abdygapparova's ongoing request for an interpreter." *Abdygapparova*, 243 S.W.3d at 208–09. Those communications "extended beyond the realm of courtroom administration and etiquette" and "became strong evidence of bias and partiality." *Id*.

The record reflects defense counsel began his opening statement by referencing the law, the burden, and the witnesses that the State would present. The trial judge may control the courtroom by asking defense counsel to confine himself to what is supposed to be in an opening statement. From the cold record we have before us, it is not apparent that the trial judge's statements even could be categorized as impatience or hostility. *Compare with Hill v. State*, No. 05–14–01445–CR, 2016 WL 1554932, at *5 (Tex. App.—Dallas Apr. 14, 2016, no pet.) (mem. op., not designated for publication) (concluding that the trial judge's comments were in fact "critical of appellant" but concluding there was no bias).

### 6. Trial Judge's Rulings

Appellant argues that four of the trial judge's rulings on appellant's objections were so erroneous that they demonstrate bias and thus, fundamental error. Specifically he argues that the

trial court exhibited bias by: (i) overruling defense counsel's objection to speculative testimony from a witness for the State; (ii) sustaining the State's objection to testimony from appellant; (iii) overruling defense counsel's objection to two State witnesses during the punishment phase; and (iv) overruling defense counsel's objection to the State's reference to appellant's 1993 conviction. Again, we disagree.

### a. Applicable Law–Rulings

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. They "can only in the rarest circumstances evidence the degree of favoritism or antagonism required" to make a fair judgment impossible. *Id.* Further, the terms bias and prejudice "do not encompass all unfavorable rulings towards an individual or her case, but instead must 'connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess ..., or because it is excessive in degree.'" *Abdygapparova*, 243 S.W.3d at 198 (citing *Liteky*, 510 U.S. at 550).

### b. Application of Law to the Facts

Appellant points to these rulings generally arguing they demonstrate the trial judge's bias. Once again, appellant relies on *Abdygapparova* and *Bethany* and argues on this contention that the cumulative nature of these rulings and the other instances mentioned above demonstrate bias on the whole. However, appellant presents no independent issues on appeal assigning error to each of these rulings. The remedy for unfair rulings is to assign error to the ruling itself rather than to complain of bias. *Charboneau v. State of Texas*, No. 05–13–00340–CR, 2014 WL 7476392, at *4 (Tex. App.—Dallas Dec. 30, 2014, no pet. h.) (mem. op., not designated for publication) (citing *In re City of Dallas*, 445 S.W.3d 456, 467 (Tex. App.—Dallas 2014, no. pet. h.)).

–22–

Because appellant failed to preserver error by objecting to the trial judge's comments and actions at trial, this Court considers only if there was fundamental error. However, we need not determine whether the alleged errors in this case were fundamental. After reviewing the record, we conclude there was neither error nor any indication of bias or partiality by the trial court. *See Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006) (stating it need not decide whether error is fundamental and instead resolving issue on basis that record did not reflect bias or partiality).

Appellant's first issue is decided against him.

### III. Ineffective Assistance of Counsel

In his second issue, appellant complains he received ineffective assistance of counsel. Initially, we note that in appellant's motion for new trial he argued that his trial counsel was ineffective in the following ways: (i) failing to take "any action to ensure that the jury was fully informed regarding the context of the comments" made by the appellant, as recorded on jail calls that the State introduced and played for the jury; and for (ii) failing "to object to the 50-year sentence" as a grossly disproportionate punishment. However, on appeal appellant asserts that his trial counsel was ineffective for different reasons: (i) the "failure to cross-examine S.P. regarding S.P.'s prior inconsistent and contradictory testimony;" (ii) the "failure to inform the jury regarding S.P.'s demonstrably false testimony;" and (iii) "the failure to object to the jury charge." Therefore, the record is silent as to the reasons for trial counsel's complained-of conduct.

Appellant acknowledges that generally a claim for ineffective assistance will not prevail when the record is silent because of the strong presumption of reasonable assistance on the part of trial counsel. However, appellant contends the record reflects there was no valid, strategic rationale for trial counsel's conduct and thus, the complained-of conduct constitutes ineffective

–23–

assistance. The State maintains that the record does not support appellant's claims and that he received reasonably effective assistance throughout the criminal proceedings. Also, the State argues that appellant has not shown that counsel's allegedly deficient performance prejudiced his defense. We agree with the State.

### A. Standard of Review

Review of trial counsel's representation is highly deferential and there is a strong presumption that trial counsel's conduct fell within a wide range of reasonable representation. *See Ex parte Saenz*, 491 S.W.3d 819, 826–27 (Tex. Crim. App. 2016); *Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013). In order for an appellate court to conclude that counsel was ineffective, counsel's alleged deficiency must be affirmatively demonstrated in the record. *See Villa*, 417 S.W.3d at 463; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The defendant must produce record evidence sufficient to overcome the presumption that, under the circumstances, the challenged action was sound trial strategy. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Villa*, 417 S.W.3d at 463. It is not enough to merely show, through the benefit of hindsight, that counsel's actions were questionable. *See Lopez*, 343 S.W.3d at 142–43. An appellate court will inquire into counsel's trial technique only when there appears to be no plausible basis in strategy or tactics for counsel's actions. *See Villa*, 417 S.W.3d at 463. In making the determination whether the specified errors resulted in the required prejudice, an appellate court should presume that the judge acted according to the law. *See Strickland*, 466 U.S. at 694.

### B. Applicable Law

To prevail on an ineffective assistance of counsel claim, a defendant must show by a preponderance of the evidence that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that the result of the proceeding

would have been different, but for counsel's deficient performance. *See Strickland*, 466 U.S. at 687–88, 694; *Villa*, 417 S.W.3d at 462–63; *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). The purpose of this two-part test is to assess whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be said to have been a reliable result. *See Strickland*, 466 U.S. at 686; *Villa*, 417 S.W.3d at 463. A defendant's failure to satisfy either part of the test defeats the ineffective assistance claim. *See Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To satisfy the first part of the test, the defendant must show counsel's performance fell below "the range of competence demanded of attorneys in criminal cases as reflected by prevailing professional norms [.]" *Nava*, 415 S.W.3d at 307. To defeat the strong presumption of reasonable professional assistance, an appellant must prove by a preponderance of the evidence that counsel's representation was unreasonable according to prevailing professional norms and that any alleged inaction was not sound legal strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). An appellant must identify the specific acts or omissions that were not the result of professional judgment. *Strickland*, 466 U.S. at 690.

Furthermore, "[a]ny allegation of ineffectiveness must be firmly rooted in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813; *see Ex parte Bryant*, 448 S.W.3d 29, 39 (Tex. Crim. App. 2014). Under normal circumstances, the record on direct appeal is not sufficient to show that counsel's representation was so deficient and lacking in tactical or strategic decision to defeat the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002) (claims cannot be based on retrospective speculation). When the record is silent regarding counsel's reasons for his conduct, an appellate court should defer to counsel's

decision if there is at least the possibility that the conduct could have been legitimate trial strategy. *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002) (en banc). Trial counsel should be afforded the opportunity to explain his actions before being denounced as ineffective. *See Goodspeed v. State*, 187 S.W.3d 390, 393-94 (Tex. Crim. App. 2005); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003) (en banc). Ordinarily, this type of record is best developed in a hearing on an application for a writ of habeas corpus or a motion for new trial. *See Perez*, 56 S.W.3d at 731.

It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim. *See Nava*, 415 S.W.3d at 308. Although it is possible for a single egregious error of omission or commission by the defendant's counsel to constitute ineffective assistance of counsel, a single error will not typically result in a finding of ineffective assistance of counsel. *See Villa*, 417 S.W.3d at 463.

To satisfy the second part of the test, appellant must show a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 694; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *See Strickland*, 466 U.S. at 694; *Villa*, 417 S.W.3d at 463; *Nava*, 415 S.W.3d at 308. A defendant's failure to satisfy either prong defeats the ineffective assistance claim. *Thompson*, 9 S.W.3d at 813.

### C. Application of Law to the Facts

As indicated above, on appeal appellant asserts that his trial counsel was ineffective for different reasons than were raised in his motion for new trial. Therefore, his trial counsel has not been afforded the opportunity to respond to the challenged conduct. As a result, nothing in the record indicates defense counsel's reasoning or strategy. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) ("We have said that 'trial counsel should ordinarily be afforded

an opportunity to explain his actions before being denounced as ineffective.' Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'").

First, appellant argues his counsel's performance was deficient because he failed to cross-examine the victim (S.P.) regarding the victim's prior inconsistent testimony. Specifically, appellant argues that trial counsel should have cross-examined S.P. on the following inconsistencies: (i) which hours he typically worked and on the date in question; (ii) whether a guitar was used or not used as part of the assault; and (iii) whether S.P. actually went inside of the vacant apartment to which he claimed he fled after the assault or simply sat on the stairs outside the vacant apartment.

The record is silent as to why trial counsel chose not to cross-examine S.P. on these points. Because of this, we may not assume that his decisions are not attributable to sound trial strategy. *See Thompson*, 9 S.W.3d at 814; *see Tapia v. State*, 933 S.W.2d 631, 634 (Tex. App.—Dallas 1996, pet. ref'd); *Weeks v. State*, 894 S.W.2d 390, 391 (Tex. App.—Dallas 1994, no pet.). Further, failure to cross-examine or impeach a witness has been recognized as a reasonable strategy. *See Davis v. State*, 276 S.W.3d 491, 502 (Tex. App.—Waco 2008, pet. ref'd); *Tadych v. State*, No. 01–06–00620–CR, 2007 WL 4465572, at *4 (Tex. App.—Houston [1st Dist.] Dec. 20, 2007, pet. ref'd) (mem. op., not designated for publication); *Sims v. State*, 807 S.W.2d 618, 624 (Tex. App.—Dallas 1991, pet. ref'd) ("[W]e cannot say that failure to attempt impeachment was not sound trial strategy."); *Harris v. State*, No. 01–88–00991–CR, 1990 WL 39468, at *4 (Tex. App.—Houston [1st Dist.] Apr. 5, 1990, pet. ref'd) (not designated for publication) (holding that failure to bring up inconsistent testimony and impeach witness may be sound trial strategy because attempting to impeach may have been "more harmful" than beneficial to appellant). As

to the failure to cross-examine S.P., appellant fails to satisfy the first prong of *Strickland* and has not shown his trial counsel's performance was deficient.

Second, appellant argues that his counsel's performance was deficient because he failed to direct the jury's attention to the victim's inconsistent testimony. For the same reasons stated above, we disagree. As to this alleged failure, appellant fails to satisfy the first prong of *Strickland*.

Third, appellant argues that his counsel's performance was deficient because he failed to make appropriate objections to the jury charge. Specifically, appellant claims that there were errors in the jury charge, i.e., improper language from *Geesa*, that should have been objected to and that he was prejudiced by trial counsel's failure to object. We have already concluded that the jury charge, as written, was not error. Trial counsel could have reasonably determined that an objection would have been frivolous. *See Patrick v. State*, 906 S.W.2d 481, 496 (Tex. Crim. App. 1995) (en banc); *Thompson*, 9 S.W.3d at 814 (when the record provides no reference to explain why counsel chose not to object to a line of questioning, the first prong of *Strickland* is not met). As to the failure to object to the jury charge, appellant fails to satisfy the first prong of *Strickland*. We conclude that appellant has not shown trial counsel's performance was deficient.

However, even if we were to assume trial counsel's performance was deficient, there is no evidence in the record that appellant was prejudiced by trial counsel's performance. Appellant argues that the failure to cross-examine S.P. constituted a foregone opportunity to reveal to the jury that S.P. could not "maintain a consistent story." Because the "testimonial demeanor of a victim" and the "failure of a witness to maintain a consistent story" is "some of the strongest possible evidence upon which a jury can base its decision that the witness is unworthy of belief," appellant argues he suffered prejudice.

*Hernandez v. State* is instructive on this point. *See* 726 S.W.2d 53, 57–58 (Tex. Crim. App. 1986). In *Hernandez* the court of criminal appeals examined a case in which a defendant alleged that he suffered prejudice because his trial counsel failed to cross-examine a codefendant. *See id.* at 57–58. There the court of criminal appeals concluded, "Given the options available to trial counsel in a case where the evidence against his client was overwhelming, we cannot sit in hindsight and find ineffectiveness due to an error such as this, involving a calculated risk in examining a codefendant." *Id.* at 58. "The right to effective counsel is not the right to error-free counsel." *Id.*

In the case before us we cannot conclude from a silent record that the choice not to cross-examine S.P. and thereby possibly draw the jury's attention to alleged inconsistencies was prejudicial. Trial counsel could have calculated the risks of such an endeavor and reasonably have come to the conclusion that, given the overwhelming evidence against his client, it would be best not to do so.

Additionally, appellant argues that trial counsel's failure to object to the jury charge caused him to suffer prejudice. Appellant urges that "in light of how that improper definition favored the State and disfavored Appellant" and "in light of how the case constituted a swearing match between S.P. and Appellant, sufficient prejudice is shown" because failing to "make certain that the jurors knew the reasonable doubt parameter that the State had to surmount (and that favored Appellant) wholly undermines confidence in the existing outcome of the case."

This Court has stated that the inclusion of the complained-of language was not error. *Bates*, 164 S.W.3d at 931; *Woods*, 152 S.W.3d at 115 (court of criminal appeals concluding that inclusion of the same complained-of language was not an abuse of discretion). Further, this Court may presume that counsel is familiar with the applicable case law. *See Patrick*, 906

S.W.2d at 496. Trial counsel "could reasonably have determined that an objection would have been frivolous." *Id*.

Accordingly, we decide appellant's second issue against him.

### IV. Conclusion

All issues are decided against appellant. We affirm the trial court's judgment.

/Douglas S. Lang/

Do Not Publish
TEX. R. APP. P. 47.2
151086F.U05

DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ADRIAN ROOSEVELT MCDANIEL, Appellant

No. 05-15-01086-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F-14-57440-H.
Opinion delivered by Justice Lang. Justices Myers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of December, 2016.